Court No. 26-03645

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| STAR EV Corporation,<br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>*Defendants.* | Case No. 1:26-cv-03645-LMG |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Christian Dysart
MAYNARD NEXSEN PC
4141 Parklake Avenue, Suite 200
Raleigh, NC 27612
919.755.1800
cdysart@maynardnexsen.com

Dated: September 25, 2026

## TABLE OF CONTENTS

ARGUMENT ....................................................................................................2

I. This Court has Jurisdiction to Remedy CBP's Unconstitutionally Imposed Interim Measures Now ....................................................................................................2

II. STAR EV's Motion for a Preliminary Injunction and Temporary Restraining Order Should be Granted Because STAR EV is Likely to Succeed on the Merits. .........10

A. STAR EV has a Legitimate Property Interest in the Proper Assessment of Imports. ....................................................................................................11

B. The High Risk of Erroneous Deprivation Necessitates Notice and Meaningful Opportunity to be Heard. ....................................................................................................12

C. The Public Interest Supports Requiring Notice and an Opportunity to be Heard Before Imposing Interim Measures ....................................................................................................17

III. STAR EV Will Likely Suffer Irreparable Harm Absent Injunctive Relief. ..........18

IV. The Balance of Equities and Public Interest Favor STAR EV ..........................19

CONCLUSION ....................................................................................................21

## TABLE OF AUTHORITIES

**Cases**

*American Air Parcel Forwarding Co. v. United States, 718 F.2d 1546* (Fed. Cir. 1983).....4, 5

*Axon Enter., Inc. v. FTC, 598 U.S. 175, 185 (2023)*........................................................5, 6, 7

*Butz v. Economou*, *438 U.S. 478, 512 (1978)*...............................................................18

*Clark v. Busey, 959 F.2d 808, 811* (9th Cir. 1992)..................................................................9

*Greentech Energy Sols., Inc. v. United States,* (Ct. Int'l Trade 2024).................................. 12

*Hylsa v. United States, 22 C.I.T. 44, 48 (1998)* ..............................................................3, 6, 7

*ICON EV LLC v. United States, 836 F. Supp. 3d 1361,* (Ct. Int'l Trade 2026)....................6, 8

*International Custom Products Inc. v. United States, 467 F.3d 1324* (Fed. Cir. 2006)..……..4, 5

*Lowa, Ltd. v. United States*, 561 F. Supp. 441, 448 (Ct. Int'l Trade 1983) ..............................6

*Mathews v. Eldridge, 424 U.S. 319, 335* (1976).....................................................................10

*Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 20* (1978)........................................12

*Miller & Co. v. United States, 824 F.2d 961, 964* (Fed. Cir. 1987) ........................................5

*NEC Corp. v. United States, 151 F.3d 1361, 1368* (Fed. Cir. 1998) ......................3, 6, 7, 8, 12

*Oman Fasteners, LLC v. United States, 2023 WL 22336*(Ct. Int'l Trade Feb. 15, 2023) .......20

*Phoenix Metal Co. v. United States, 2024 WL 28915*(Ct. Int'l Trade June 10, 2024).........4, 12

*Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 216 (1995)........................................................3

*Rimco Inc. v. United States, 98 F.4th 1046, 1054* (Fed. Cir. 2024)..........................................7

*Royal Brush Mfg., Inc. v. United States, 75 F.4th 1250, 1257*(CAFC 2023) .............10, 11, 12

*Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 10* (1942) ....................................................9

*Sunpreme Inc. v. United States, 892 F.3d 1186* (Fed. Cir. 2018) ................................4, 5, 6, 8

*Superior Com. Sols., LLC*, 811 F. Supp. 3d 1376 (Ct. Int'l Trade 2025) ................................6

*Thunder Basin Coal Co. v. Reich, 510 U.S. 200* (1994).........................................................5

*United States v. Uniroyal, Inc.*, 687 F.2d 467, 472 (C.C.P.A. 1982) ....................................4, 5

*Vietnam Finewood Co. Ltd. v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020) .3, 7

**STATUTES AND REGULATIONS**

19 C.F.R. § 165.15(c)(1) ....................................................................................................16

19 U.S.C. § 1517 ....................................................................................................2, 3, 9, 13, 20

19 U.S.C. § 1517(b)(1). ....................................................................................................13

19 U.S.C. § 1517(c)(2) ....................................................................................................13

19 U.S.C. § 1517(e) ....................................................................................................3

19 U.S.C. § 1517(f) ....................................................................................................3

19 U.S.C. § 1517(g) ....................................................................................................2, 9

19 U.S.C. § 1517(g)(3) ....................................................................................................2, 3

28 U.S.C. § 1581 ....................................................................................................2, 3, 4, 7, 8, 9

28 U.S.C. § 1581(a) ....................................................................................................6

28 U.S.C. § 1581(c) ....................................................................................................2, 3, 4, 7, 8, 9

28 U.S.C. § 1581(h) ....................................................................................................5, 6

28 U.S.C. § 1581(i) ....................................................................................................3, 4, 6, 8

28 U.S.C. § 1581(i)(1)(D) ....................................................................................................8

28 U.S.C. § 1581(i)(2). ....................................................................................................4

28 U.S.C. § 1651(a). ....................................................................................................2, 8

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: HONORABLE LEO M. GORDON, SENIOR JUDGE**

| | |
|---|---|
| STAR EV Corporation,<br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES; U.S. CUSTOMS AND BORDER<br>PROTECTION; and ERIC CHOY, in his official capacity as Executive Director, Trade Remedy Law Enforcement Directorate, Office of Trade, U.S. Customs and Border Protection,<br><br>*Defendants.* | Case No. 26-3645 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Nowhere in its brief does the government deny that U.S. Customs and Border Protection ("CBP") is currently subjecting STAR EV's electric golf carts to antidumping and countervailing duty (AD/CVD) orders that *do not* cover STAR EV's merchandise. And nowhere in its brief does the government attempt to explain how that is lawful.

Instead, the government offers a limp defense on the injunctive-relief factors and raises jurisdictional objections that would permit CBP to put out of business any importer it wants to, for whatever reason it likes, and without proper notice. According to the government's theory, no judge can stop CBP from subjecting any importer of any product to AD/CVD cash deposits on electric golf carts, then reaching a negative evasion determination and refunding those duties to the creditors of the defunct importer whose owners and employees have already lost their livelihoods. As this Court is now seeing through the number of cases being brought for injunctive

relief, the government's theory is directly and imminently affecting multiple businesses, and their collective hundreds of American employees.

But this Court is empowered, despite what the government says. It has the power to stop CBP from subjecting importers to business-ending, unconstitutional EAPA proceedings—whether through its residual jurisdiction or through an injunction issued in aid of its jurisdiction to review a final evasion determination. The Court should grant STAR EV's motion and enjoin the interim measures.

## ARGUMENT

### I. This Court has Jurisdiction to Remedy CBP's Unconstitutionally Imposed Interim Measures Now

The government's theory that this Court lacks jurisdiction to prevent CBP from unlawfully putting an importer out of business, ECF No. 38 ("Resp.") at 10-17, should be rejected. EAPA itself presumes that review will be available outside of 28 U.S.C. § 1581(c); the remedy under 28 U.S.C. § 1581(c) is manifestly inadequate; and, even if it were not, the Court retains the power to issue an injunction to preserve its ability to review a final evasion determination under 28 U.S.C. § 1581(c), *see* 28 U.S.C. § 1651(a).

Indeed, Congress anticipated that 28 U.S.C. § 1581(c) would not be the exclusive means for obtaining judicial review of unlawful actions that CBP takes in EAPA investigations. Although the government cites to 19 U.S.C. § 1517(g) to argue that the statute "clearly manifests legislative intent that interim measures imposed at an early stage of an investigation are not fit for judicial review," Resp. at 18, the government fails to cite to the express language in subsection three of that same statute. Within § 1517(g)(3), Congress expressly provided that "[n]othing" in the subsection of the statute governing judicial review "shall affect the availability of judicial review to an interested party under any other provision of law." That provision presumes that judicial

review of CBP's actions in EAPA proceedings will be available under other provisions of law.

Under the government's theory, the Court's jurisdiction is "strictly limited" to reviewing § 1517(c) and (f) decisions under 28 U.S.C. § 1581(c). However, the government's theory would render § 1517(g)(3) meaningless if this Court could only review CBP's "final" evasion determinations and not, in appropriate instances, CBP's alleged violations of law in EAPA investigations that have final, business-ending effect. *See also NEC Corp. v. United States*, 151 F.3d 1361, 1368–69 (Fed. Cir. 1998) (agreeing that forcing a plaintiff to wait to raise a due-process argument under § 1581(c) after a Commerce investigation concluded, instead of proceeding immediately under § 1581(i), was a "fool's errand").[1] But Congress does not pass meaningless provisions of law. *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 216 (1995). For § 1517(g)(3) to mean something, it must save some avenue of judicial review for CBP's determinations made under provisions other than § 1517(c) and (f).

A challenge such as STAR EV's under 28 U.S.C. § 1581(i) to unlawfully imposed interim measures, 19 U.S.C. § 1517(e), is a natural fit—at least where the remedy provided by 28 U.S.C. § 1581(c) for review of a final evasion determination is manifestly inadequate. ECF No. 11 ("Mot.") at 23-24.

In fact, the government acknowledges that "the Court has previously indicated that there may be scenarios where a plaintiff may allege specific enough harm such that jurisdiction under § 1581(i) might be appropriate." Resp. at 13 (citing *Hysla v. United States*, 22 C.I.T. 44 (1998);

[1] *Vietnam Finewood Co. Ltd. v. United States*, 466 F. Supp. 3d 1273 (Ct. Int'l Trade 2020), is not to the contrary. There, this Court explained that CBP's imposition of interim measures is normally reviewable under 28 U.S.C. § 1581(c) after a final evasion determination. *Id.* at 1284. But the plaintiffs merely argued "that the remedy afforded by the court's (c) jurisdiction is manifestly inadequate because CBP failed to issue a final determination by the purported statutory deadline." *Id.* at 1284 n.12. They did not argue, as STAR EV does here, that jurisdiction is manifestly inadequate under § 1581(c) because the plaintiff will not exist by the time of a final evasion determination. *See id.*; *Hylsa*, 22 C.I.T. at 48.

*Phoenix Metal Co. v. United States*, 2024 WL 2891503 at *9 (Ct. Int'l Trade June 10, 2024)). But the government argues that 28 U.S.C. § 1581(c) is not manifestly inadequate in these circumstances for a variety of reasons, each of which falls short.

To start, the government suggests that interim measures do not constitute final agency action, such that they cannot be reviewed unless through § 1581(c) after a final evasion determination. Resp. at 10–13. That is wrong for all the reasons the Court in *ICON EV* already explained—and to which the government "respectfully disagree[s]." Mot. at 11. It is unclear how agency action that has immediate legal consequences and will extinguish a company is neither "final" nor reviewable.

The government ultimately relies heavily on *Sunpreme Inc. v. United States*, 892 F.3d 1186 (Fed. Cir. 2018); *International Custom Products, Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006); and *American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546 (Fed. Cir. 1983), in arguing that STAR EV has failed to prove manifest inadequacy of the remedy available under 28 U.S.C. § 1581(c). Resp. at 13–17. These decisions, properly understood, do not undermine this Court's § 1581(i) jurisdiction over this case.

The "manifest inadequacy" standard is a judicially implied rule that stems from concerns of exhaustion of constitutionally sufficient administrative process. Section 1581 itself contains no exceptions to "residual" jurisdiction other than those specified. 28 U.S.C. § 1581(i)(2). But, based on legislative history and inference, the Federal Circuit's predecessor concluded that § 1581(i) could "not be used generally to bypass administrative review by meaningful protest." *United States v. Uniroyal, Inc.*, 687 F.2d 467, 472 (C.C.P.A. 1982). That is, "the broad subject matter jurisdiction of the court under § 1581(i) may be invoked only when no other remedy is available or the remedies provided under other provisions of 28 U.S.C. § 1581 are manifestly inadequate." Id. at

475 (Nies, J., concurring). "Unless inadequate as a matter of due process, a challenge not made here, [an importer] must utilize the exclusive remedies provided by Congress." *Id*. (emphasis added).

The Federal Circuit adopted Judge Nies's guardrails on § 1581(i) jurisdiction in *American Air Parcel Forwarding* and clarified that a violation of a statute on CBP's part is not per se a due-process violation. 718 F.2d at 1550–51 ("Every instance in which the Government fails to act in accordance with a statute or regulation does not raise a constitutional issue."). As in *Uniroyal*, the Federal Circuit explained that the importer could have sought, but did not seek, quick administrative and judicial relief through protests that requested accelerated disposition. *Id.* at 1550–51. The importer could even have sought "judicial relief … prior to importation under [28] U.S.C. § 1581(h)," apparently, if it "wished to avoid the financial distress in which it f[ound] itself." *Id.* at 1551. *International Custom Products* is to similar effect. 467 F.3d at 1327–28. And *Sunpreme* extends these cases' logic to scope rulings before the U.S. Department of Commerce. 892 F.3d at 1193; see *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987).

In other words, "manifest inadequacy" is akin to other doctrines, like exhaustion and *Thunder Basin*, that do not require a plaintiff to first seek redress before an agency if that process is in some way constitutionally deficient or otherwise incapable of providing meaningful relief. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). "A special statutory review scheme," the Supreme Court "has recognized, may preclude [trial] courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). But if "precluding [trial] court jurisdiction would foreclose all meaningful judicial review of" a claim that is "wholly collateral to the statute's review provisions" and that is "outside the agency's expertise," then courts "presume that Congress does not intend to limit jurisdiction." *Id.* at 186

(cleaned up). Futility of exhaustion reflects similar considerations. *Sunpreme*, 892 F.3d at 1193–94.

But where, as here, an importer is being subjected to an unconstitutionally structured administrative process that would otherwise have to be exhausted to obtain judicial review under a specific provision of § 1581(a) through (h), § 1581(i) jurisdiction is available. The Court's recent rulings in *ICON EV* and *Superior Commercial Solutions* prove that exact point. *ICON EV LLC v. United States*, 836 F. Supp. 3d 1361, (Ct. In'l Trade 2026) (finding that § 1581(i) jurisdiction was appropriate and that ICON should "not be driven to extinction while waiting for judicial review of a final determination when the interim measures—not the final determination—have caused its injury"); *Superior Com. Sols., LLC*, 811 F. Supp. 3d 1376 (Ct. Int'l Trade 2025) (holding that § 1581(i) jurisdiction was proper); *see also NEC Corp.* ( finding review appropriate under § 1581(i) because requiring [plaintiff] to appeal from the conclusion of a preordained investigation is "manifestly inadequate"); *Lowa, Ltd. v. United States*, 561 F. Supp. 441, 448 (Ct. Int'l Trade 1983) ("It must be noted that this case does not involve an extraordinary hardship or unusual injury which would render the exhaustion of administrative remedies lacking in due process or otherwise inappropriate."), *aff'd*, 724 F.2d 121 (Fed. Cir. 1984); *accord Axon Enter.*, 598 U.S. at 191 (despite a special statutory review scheme, a court can entertain a claim that a plaintiff is "being subjected" to "unconstitutional agency authority," because it is "a here-and-now injury"). Where an importer "is attempting to adjudicate an issue that goes to the very heart of the administrative system"—here, an administrative process that fails to provide predeprivation notice and opportunity to be heard—"the only adequate avenue available" is § 1581(i). *NEC Corp.*, 151 F.3d at 1369; *accord Hylsa v. United States*, 22 C.I.T. 44, 48 (1998). STAR EV's due-process claims, at the very least, thus fall squarely within § 1581(i)'s grant of jurisdiction to this Court.

Further reinforcing this conclusion is the fact that STAR EV's due-process claims are the same regardless of whether CBP reaches a negative evasion determination. See *Axon Enter.*, 598 U.S. at 191–92; *cf. Rimco Inc. v. United States*, 98 F.4th 1046, 1054–55 (Fed. Cir. 2024) (§ 1581(c) jurisdiction not manifestly inadequate where importer challenged as unconstitutional under the Eighth Amendment an allegedly exorbitant AD/CVD duty rate—a claim dependent on the outcome of a Commerce proceeding). Indeed, STAR EV is not even challenging extension or suspension of liquidation. But "it is impossible to remedy" STAR EV's due-process injury "once the proceeding is over, which is when appellate review kicks in." *Axon Enter.*, 598 U.S. at 191. "Suppose [this Court] agrees with [STAR EV], on review of an adverse" evasion determination, that STAR EV was deprived of predeprivation notice and an opportunity to be heard through CBP's procedures for imposing interim measures. *Id.* "The court could of course vacate [CBP's] order. But [STAR EV's due-process] claim is not about that order; indeed, [STAR EV] would have the same claim had it won before the agency. The claim, again, is about subjection to an illegitimate proceeding …. And as to that grievance, the court … can do nothing: A proceeding that has already happened cannot be undone. Judicial review of [STAR EV's] structural constitutional claims would come too late to be meaningful." *Id.*

And for these same reasons, the remedy provided by review of a final evasion determination under 28 U.S.C. § 1581(c) is manifestly inadequate. Although the government cites to *Vietnam Finewood Co. Ltd. v. United States* to support its argument that relief pursuant to 28 U.S.C. § 1581(c) is the proper remedy, STAR EV is not seeking "a negative finding of evasion and corresponding relief." 466 F. Supp. 3d 1273, 1283 (Ct. Int'l Trade 2020). It is seeking relief from being subjected to an unconstitutional process that does not in any way depend on a final evasion determination. *See, e.g., NEC Corp.*, 151 F.3d at 1369; *Hylsa*, 22 C.I.T. at 48. And that

relief cannot ever be provided after the conclusion of an EAPA proceeding; by that time, the request for relief—enjoining the interim measures during the pendency of the EAPA proceeding—would be moot. *NEC Corp.*, 151 F.3d at 1369. That makes waiting for judicial review of a final evasion determination an "exercise in futility, or incapable of producing any result; failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain." *Sunpreme*, 892 F.3d at 1193–94 (quotation omitted).[2] In other words, STAR EV getting some or all of its money back does not provide it with the pre-deprivation notice and an opportunity to be heard to which it was entitled. Jurisdiction under § 1581(c) following a final evasion determination is thus manifestly inadequate.

In fact, this Court has already indicated that jurisdiction under 28 U.S.C. § 1581(i) was appropriate in a nearly identical situation stemming from the same Orders, in *ICON EV*. This Court reasoned that jurisdiction was appropriate because there were "no procedures that ICON can use to challenge CBP's imposition of interim measures with no notice. ICON should not be driven to extinction while waiting for judicial review of a final determination when the interim measures – not the final determination – have caused its injury." 836 F. Supp. 3d at 1369. Here, as in *ICON EV*, there are no procedures STAR EV can use to challenge CBP's imposition of interim measures with no notice, and this Court's exercise of jurisdiction under 28 U.S.C. § 1581(i)(1)(D) is appropriate.

Here, even if § 1581(c) jurisdiction was not manifestly inadequate, and even if the interim measures were somehow non-final, issuing an injunction pursuant to § 1651(a) appropriately

---

[2] It bears repeating that in none of the cases the government cites was the administrative process that had to be exhausted before coming to this Court both insufficient as a matter of due process and so burdensome that it effectively prevented the plaintiff from fully exhausting that process. *See Am. Air Parcel*, 718 F.2d at 1550–51; *Int'l Custom Prods.*, 467 F.3d at 1327–28; *Sunpreme*, 892 F.3d at 1193–94. STAR EV's imminent closure as a result of unconstitutional interim measures will prevent it from responding to CBP's inquiries and defending itself in the EAPA proceeding,

preserves STAR EV's access to later judicial review under § 1581(c). *See Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992) ("[T]he All Writs Act … empowers the federal courts in certain circumstances to issue interlocutory relief for nonfinal agency action …"). Congress clearly has provided for judicial review of CBP's final evasion determinations. 19 U.S.C. § 1517(g); 28 U.S.C. § 1581(c). The "legislature has" thus "provided appropriate resort to the courts" for the "correction" of the very "errors of law" that CBP has made in this case. *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 10 (1942). But "such judicial review would be an idle ceremony" given that "the situation" will be "irreparably changed before the correction could be made"—in other words, the damage to STAR EV resulting from lack of notice and an opportunity to be heard will be done, absent an injunction. *Id.* Section 1651(a) provides the Court the authority to issue an injunction in this circumstance, and for all the reasons already explained, it should do so.

The government argues that even if the Court invoked its residual jurisdiction, STAR EV's claims would still be unripe for review. Resp. at 17-19. However, STAR EV's claims are not "speculative" and based on "abstract disagreements over administrative policies" as the government suggests. Resp. at 17-18 (quoting *Abbott Labs. V. Gardner*, 387 U.S. 136, 148-49 (1967)). As stated above, STAR EV is seeking relief from being subjected to an unconstitutional process, and this relief does not in any way depend on a final evasion determination. *See, e.g., NEC Corp.*, 151 F.3d at 1369; *Hylsa*, 22 C.I.T. at 48. As discussed above, that relief cannot ever be provided after the conclusion of an EAPA proceeding, at which time the request for relief—enjoining the interim measures during the pendency of the EAPA proceeding—would be moot. *NEC Corp.*, 151 F.3d at 1369. Accordingly, STAR EV's claims are ripe for review. *Scripps-Howard Radio,* at 10 ("[i]f the administrative agency has committed errors of law for the correction of which the legislature has provided appropriate resort to the courts, such judicial review would

be an idle ceremony if the situation were irreparably changed before the correction could be made").

**II. STAR EV's Motion for a Preliminary Injunction and Temporary Restraining Order Should be Granted Because STAR EV is Likely to Succeed on the Merits.**

As explained in STAR EV's motion, imposing interim measures (including rejecting entries and requiring live entry with an irrebuttable presumption that the entries are subject to AD/CVD duties) without prior notice or a meaningful opportunity to be heard violates Fifth Amendment due process, both because this Court has already said so and because *Mathews v. Eldridge*, 424 U.S. 319 (1976), leads to the same result. *See ICON EV*, 836 F. Supp. 3d at 1370.

As the Court explained when granting ICON preliminary injunctive relief, the Fifth Amendment affords "an importer participating in an administrative proceeding," including an EAPA proceeding, the procedural due process right to notice and a meaningful opportunity to be heard." *Id.* at 1370-71 (quoting *Superior Com. Sols., LLC*, 811 F. Supp. 3d 1376 (Ct. Int'l Trade 2025); *Royal Brush Mfg., Inc. v. United States*, 75 F4th 1250, 1257 (CAFC 2023). Due process generally requires the government to provide such notice and a meaningful opportunity to be heard before, not after, a deprivation occurs. *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985) ("some form of pretermination hearing" is generally required). "To determine whether due process has been provided, courts consider (1) the private interest at stake: (2) the risk of an erroneous deprivation through the procedures used and the probative value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *ICON EV*, 836 F. Supp. 3d at 1370 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

For the same reasons the Court found ICON likely to succeed on the merits, STAR EV likely has a legitimate property interest for which it did not receive due process before interim measures were imposed.

**A. STAR EV has a Legitimate Property Interest in the Proper Assessment of Imports.**

The government claims that STAR EV is unlikely to succeed on the merits because STAR EV does not "identify a protectable property interest in importing merchandise into this country free of AD and CVD duties." Resp. at 21. Although the government devotes much of its brief to support this theory, it fails to reference this Court's recent ruling on this exact issue. The government may "respectfully disagree," but this Court has already made clear that an importer has "a legitimate property interest in the proper assessment of imports for which it did not receive due process before interim measures were imposed." *ICON EV*, 836 F. Supp. at 1370-71(Ct. Int'l Trade 2026) (citing *Superior Com. Sols.*, 811 F. Supp. 3d at 1370-71 (citing *Royal Brush Mfg.*, 75 F.4th at 1257)).

The government attempts to distinguish the facts in *Royal Brush* from STAR EV's in hopes of bolstering its theory that "a legitimate property interest" does not exist "at the time CBP initiates the investigation, or when it imposes interim measures." Resp. at 22. However, this Court relied on *Royal Brush* in holding that ICON had a legitimate property interest "for which it did not receive due process *before* interim measures were imposed." *ICON EV*, 836 F. Supp. 3d at 1370-71 (emphasis added). Given the effect of the interim measures on STAR EV, this property interest is heightened. Here, the interim measures suddenly imposed a combined 519.23% *ad valorem* cash-deposit rate. "The combination of cash deposits for AD/CVD duties with the live entry requirement"—"akin to "sanctions"—"requires the importer to suddenly deposit a large amount

of cash with Customs before it can even complete the sale for which it is importing the goods." *Phoenix Metal Co. v. United States*, 2024 WL 2891503, at *9 (Ct. Int'l Trade June 10, 2024) (citation omitted). The imposition of these measures "for any appreciable time works a uniquely final deprivation." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 20 (1978). And although duties may later be refunded, STAR EV lacks any realistic ability "to ameliorate the interim loss," *Mathews*, 424 U.S. at 341, because it will be put out of business before a refund could do any good. *See, e.g., Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (a "favorable final judgment might well be useless" for a company facing imminent bankruptcy).

In support of its argument that STAR EV has no protected property interest, the government argues that Congress endowed CBP with enforcement power, which is not unique feature of EAPA. Resp. 25-27. But this is a red herring. STAR EV's claim is not challenging "CBP's enforcement power under the statute," but is rather challenging the process that CBP employed (or rather, did not employ) in depriving STAR EV of its property interests. *NEC Corp. v. United States*, 151 F.3d 1361, 1370 (Fed. Cir. 1998); see also *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250, 1257 & n.6 (Fed. Cir. 2023) ("The government agrees that importers in evasion proceedings enjoy rights to procedural due process."). That "is a procedural due process claim of the kind generally cognizable under the Fifth Amendment of the Constitution." *NEC Corp.*, 151 F.3d at 1370; *see also Greentech Energy Sols., Inc. v. United States*, 714 F. Supp. 3d 1315, 1328 (Ct. Int'l Trade 2024) (explaining that the "Government must provide recourse for importers to rebut" a "presumption" that imported merchandise, or components thereof, are of a specific origin for purposes of applying AD/CVD orders).

**B. The High Risk of Erroneous Deprivation Necessitates Notice and Meaningful Opportunity to be Heard.**

The government contends that STAR EV "is not entitled to any procedural protections beyond those provided by the EAPA statute that will be afforded to [STAR EV] throughout the investigation." This argument simply misses the point—STAR EV *has already been deprived* of its procedural protections because it did not receive any notice or opportunity to respond to the allegations that prompted the interim measures.

Under the EAPA, an interested party may submit an allegation that merchandise covered by an AD/CVD order has entered the United States through evasion. 19 U.S.C. § 1517(b)(1). CBP must initiate an investigation within fifteen business days of accepting the petition if the allegation reasonably suggests evasion. *Id.* STAR EV understands that this threshold to initiate an investigation is low.

However, before imposing interim measures, CBP has **ninety** calendar days from initiation to investigate and decide whether "there is a reasonable suspicion" of evasion. Pursuant to 19 U.S.C. § 1517(c)(2), CBP has broad authority to "collect and verify" any information it deems necessary to make its evasion determination. In fact, CBP routinely exercises that authority by issuing forms CF-28s and CF-29s to investigate the alleger's allegations and obtain information directly from the importer. In fact, during the comment period of the proposed EAPA rules, multiple commenters voiced concern that the lengthy investigation period "could impede an importer's due process rights by significantly limiting the time to prepare a defense." *Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 89 Fed. Reg. 19239 (2024), https://www.federalregister.gov/documents/2024/03/18/2024-04713/investigation-of-claims-of-evasion-of-antidumping-and-countervailing-duties#page=19262. However, in response, CBP stated that it needed "adequate time to investigate the alleged evader's actions." *Id.* And although "CBP may make a decision earlier than 90 days" it should only "do so after a **thorough**

investigation." *Id.* (emphasis added) CBP's alleged intent to need ninety days to conduct a *thorough* investigation is in stark contrast to the facts in this case.

Here, CBP formally initiated its investigation on March 20, 2026. A mere *21 days later*, on April 10, 2025, CBP simultaneously informed STAR EV of the investigation and imposed interim measures. At no point during that 21-day period did CBP issue its routine forms CF-28 and CF-29 to investigate the alleger's allegations and obtain information directly from STAR EV. Had STAR EV been informed of the investigation or received these forms, it would have provided comprehensive, exhaustive documentation showing that STAR EV does not import Chinese-origin LSPTVs or rolling chassis, and that the only LSPTVs or rolling chassis that STAR EV imports are products of Vietnam.

In a letter to CBP dated May 26, 2026, counsel for STAR EV pointed CBP to multiple inconsistencies in the allegation. Mot. at 11. As counsel pointed out, CBP could and should have checked the import records of STAR EV, which were immediately available in CBP's possession, to verify or disprove the claims of the Coalition. However, at this point, CBP had already imposed interim measures. Further, affording notice and an opportunity to be heard would have allowed STAR EV to correct CBP's misreading of the *LSPTV Orders* and to provide whatever additional information was needed. Because STAR EV was not afforded a meaningful opportunity to respond in this "investigatory" period, it was not afforded due process.

The Coalition has filed its own Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 37 ("C-Resp.") .Although the Coalition has "vigorously disputed" STAR EV's criticisms of its Allegation, it has to date failed to address any of the criticisms. CBP has not addressed any of these criticisms either. Instead, the Coalition claims at least six times in its Response some variation that "CBP followed the EAPA

procedures and found, chiefly on its own research and Plaintiff's entry documents and customs data, a reasonable suspicion that Plaintiff has engaged in evasion." C-Resp. at 2; *see also id.* at 4, 12, 13, 29 and 32. However, a line-by-line analysis of the independent investigatory findings of TRLED investigators indicates that no meaningful investigation occurred between March 20 and April 10 and that any questions the investigators may have had during that period could and should have been easily resolved by using the prescribed CF28 and CF29 investigatory process – well within the aforementioned ninety (90) day investigatory period. In particular, within its "Notice of Initiation and Investigation and Interim Measures," dated April 10, 2026, in addition to presenting no evidence whatsoever that CBP fact checked any claim of the Allegation, the totality of the TRLED investigation record indicates that:

(1) TRLED used an adverse inference – an impermissible adverse inference - based on the conduct of others (evidently some CF28 response failure by one or more third parties);

(2) TRLED pointed to a single Entry Summary ("0215") as evidence that subject merchandise was part of that entry. TRLED: (1) properly quotes the Orders regarding "rolling chassis," (2) notes that a "chassis frame" is listed on the Commercial Invoice; and (3) notes that parts imported with a "rolling chassis" are subject to the Orders. All true. Of course, the unwritten TRLED inference was that the frames met the definition of a "rolling chassis," subjecting the merchandise to the Orders. STAR EV does not deny CBP a right to make inferences – even perhaps far-fetched inferences like this - but CBP had <u>actual knowledge</u> that these frames did **NOT** meet the definition of a rolling chassis. Between August 8 and August 22, 2025 CBP inspected (an "intensive exam") Entry 0215, found no rolling chassis, and released the goods without imposing any AD/CVD duties. Even under the Coalition's expanded "disassembly" theory (another topic for another day), the merchandise in question was not subject merchandise – and if

CBP had any lingering doubts, it could and should have communicated same to STAR EV as part of the investigatory process (a picture, as they say, is worth a thousand words) – no CF28 or CF29 was ever issued by CBP in connection with this shipment that they inspected;

(3) TRLED pointed to a single item in a single import transaction (0215) indicating that STAR EV's use of HTS Code 8708.99.5300 (designating a frame made from iron, rather than a frame made from steel) was an error and that STAR EV should have paid 57.5% duty on that item instead of the 55% duty that STAR EV declared and paid. Assuming only for now that CBP is correct: (1) a single error is not evidence of a pattern or practice, and is certainly not indicative of evasion; (2) the Harmonized Tariff Schedule of the United States does not have a specific code for LSPTV frames; (3) CBP Informed Compliance Publication "Vehicles, Parts and Accessories Under the HTSUS" repeatedly acknowledges that vehicle classification is <u>complicated</u>; (4) the entire shipment was clearly and conspicuously labeled "Golf Car Parts," which is both accurate and not evasive; and (5) <u>a single clerical error (amounting to a $451 discrepancy)</u> is not the basis for initiating an investigation pursuant to 19 C.F.R. § 165.15(c)(1);

(4) TRLED added 3 attachments to the Administrative Record documenting the relationship between Minland and Marshell, which to STAR EV's knowledge has never been a disputed fact;

(5) TRLED uploaded irrelevant Minland and Marshell trade data from its CBP Data Systems for transactions in 2025, ignoring its own records that clearly indicate that STAR EV imported no merchandise from Minland during that period; and

(6) TRLED uploaded information from the public-facing B2C (business-to-consumer) websites of 4 Chinese companies, without evidently making any further effort whatsoever to examine whether any of these businesses also had B2B (business-to-business ODM or OEM)

customer relationships. Was CBP on notice that further investigation was required? Absolutely. The first sentence of the Marshell home page says: "Marshell is one of the more famous manufacturers of electric vehicles and battery-related automotive electronic components in China." The heading of the company profile uploaded by CBP indicates that Marshell is a: "Manufacturer/Factory & Trading Company." A simple click today on the "Trade Capacity" button on the 'made in China' site referenced by CBP indicates 3,417 Marshell products. The Eagle home page promotes: "Global spare parts network for fast replenishment" and states: "OEM/ODM collaborations are welcome." The EDACAR homepage, touting its 15-year history of manufacturing world class golf cart parts and accessories for Coalition members CLUB CAR and E-Z-GO, states: "EDACAR always has sufficient inventory to ensure customers receive parts and accessories in the fastest time we keep a stock of over 100 pieces for each cart part." And, lastly, the Windus "About Us" page clearly indicates that "Windus prides itself on being a "one-stop supply chain solution." Had TRLED investigators conducted a *thorough* investigation on each of these websites, they would at the very least have questioned the relevance of these website printouts to an evasion investigation.

As above, the Administrative Record indicates that the TRLED investigation was not "thorough;" in fact, it appears no meaningful investigation occurred at all between March 20 and April 10, the only period of time that matters for these purposes.

### C. The Public Interest Supports Requiring Notice and an Opportunity to be Heard Before Imposing Interim Measures

The government contends that "the availability of interim measures serves important governmental interest in preventing evasion and concealment of unfair and unlawful trade

practices." Resp. at 31. STAR EV does not disagree with this proposition and, as repeatedly expressed throughout this Response, is not arguing that the interim measures themselves deprived STAR EV of due process rights. Rather, STAR EV takes issue with the complete lack of a thorough investigation, the lack of notice and opportunity to be heard *prior* to the imposition of these measures.

The public interest supports requiring notice and an opportunity to be heard before imposing the interim measures. *See Mathews*, 424 U.S. at 347-48. It should not cost the government much, if anything, to afford importers time to make a documentary submission directly in response to an allegation of evasion during the statutorily provided 90-day window. In fact, affording importers time to make a documentary submission directly in response to an allegation could provide critical information to the government that negates the need for initiating a costly investigation. If anything, providing importers notice and an opportunity to respond before interim measures are imposed would "tend to enhance the reliability of information and the impartiality of the decision-making process," leading to "a less pressing need for individual suits to correct constitutional error." *Butz v. Economou*, 438 U.S. 478, 512 (1978). Accordingly, both because this Court has already said so, and because Supreme Court precedent leads to the same result, STAR EV is likely to succeed on the merits of its due-process challenge to CBP's interim measures.

## III. STAR EV Will Likely Suffer Irreparable Harm Absent Injunctive Relief.

STAR EV's motion explains at length, and with reference to supporting declarations and data, how the interim measures will quickly put STAR EV out of business within one month.[3] Yet

[3] STAR EV's previously conveyed that its loan obligations were in deferment status until September 15, 2026. Since filing its Motion, STAR EV negotiated and has been provided with a limited one-month extension to October 15,

the government contends this merely shows STAR EV's "purported inability to run a business consistent with the trade laws of the United States," which does not constitute irreparable harm. Resp. at 34. But this argument seems to be premised on the at minimum premature and unsubstantiated conclusion that STAR EV is in fact evading AD and CVD orders.

Unlike the government claims, STAR EV is not "arguing that it had no opportunity to be heard on the very same AD and CVD orders that CBP is seeking to enforce." Resp. at 34. Rather, it is arguing that during the 21-day window in which CBP was conducting its investigation and determining whether reasonable suspicion existed, STAR EV was not provided with notice and opportunity to be heard regarding the allegations. Although STAR EV could have provided ample evidence discounting the allegations, it was not provided the opportunity to do so. Instead, CBP swiftly imposed sanction like interim measures that are leading STAR EV towards imminent bankruptcy while it abides by the EAPA process. The lack of due process in the investigatory process (not the sanctions themselves) caused irreparable harm, and absent injunctive relief STAR EV will cease to exist.

## IV. The Balance of Equities and Public Interest Favor STAR EV

The government does not respond to STAR EV's point that the public interest does not favor allowing the government to violate importers' rights. *See* Resp. at 35–37. Instead, the government focuses on the fact that STAR EV's requested injunction could help importers, like the importer in *Phoenix Metal,* evade paying AD/CVD duties. *Id.* (citing *Phoenix Metal*, 2024 WL 2891503, at *4). That argument is disingenuous, given that the government nowhere contests that STAR EV's carts are outside the scope of AD/CVD orders. Just how the balance of hardships and

---

2026.

the public interest could favor keeping the interim measures in place, when the carts plainly are not covered merchandise under 19 U.S.C. § 1517, is unclear. Especially given that the "harm to the government" here "is minimal to non-existent, because it will receive no revenue from [STAR EV] if the company goes bankrupt." *Oman Fasteners, LLC v. United States*, 2023 WL 2233642, at *13 (Ct. Int'l Trade Feb. 15, 2023), aff'd, 125 F.4th 1068 (2025).

The government also complains that providing due process to importers would allow importers "to obscure evidence and change their practices before [CBP] has a chance to impose interim measures, thwarting [CBP's] investigative efforts and depriving the government of the revenue." Resp. at 36. This argument is also unavailing. First, the objective of these investigations is to have evading importers change their practices to stop evasion, not—as the government appears to suggest—to provide a new avenue for the government to (unlawfully) collect revenue. Further, evasion proceedings are backward looking. Therefore, CBP will identify and assess duties on subject merchandise previously imported during the investigation, eliminating the risk of lost revenue. Second, CBP is perfectly capable of applying adverse facts available when importers "obscure evidence." This is therefore no justification for imposing business-ending interim measures on cooperating entities. Third, it is again unclear what this purported risk has to do with this case. STAR EV has worked with CBP and has not obscured evidence. To suggest that STAR EV is an 'unscrupulous importer playing "whack-a-mole" games' is, frankly, an insult to both a company with an award-winning 23 year operating history and the 90+ hard working South Carolinians it employs. In any event, STAR EV is not asking to enjoin interim measures for every importer in perpetuity. "Granting [STAR EV's] motion," rather than "encourag[ing] other parties to attempt to circumvent" EAPA, Resp. at 36, will incentivize the government to follow the law.

## CONCLUSION

For these reasons, the Court should deny the government's motion to dismiss, grant STAR EV's motion for a temporary restraining order and preliminary injunction, and enjoin the interim measures during the EAPA proceeding.

Dated: September 25, 2026

Respectfully submitted,

*/s/ Christian Dysart*

Christian Dysart
*cdysart@maynardnexsen.com*
MAYNARD NEXSEN PC
4141 Parklake Avenue, Suite 200
Raleigh, NC 27612
P: 919.755.1800
*Counsel for STAR EV Corporation*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing submission complies with the word-limitation set forth in Standard Chambers Procedure 2(B)(1) and contains 6,341 words.

Dated: September 25, 2026

*/s/ Christian Dysart*
Christian Dysart
*cdysart@maynardnexsen.com*
MAYNARD NEXSEN PC
4141 Parklake Avenue, Suite 200
Raleigh, NC 27612
P: 919.755.1800
*Counsel for STAR EV Corporation*